# Tab A

# Commonwealth of Massachusetts

SUFFOLK, ss.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. _18 - 1201 - C_

*Daphne Chikel* PLAINTIFF(S),

v.

*Steward Health care System LLC* DEFENDANT(S)

## SUMMONS

THIS SUMMONS IS DIRECTED TO *Steward Health care System LLC*. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the *Suffolk Superior* Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
    a.  Filing your signed original response with the Clerk's Office for Civil Business, *Suffolk Superior* Court, *3 Pemberton square Boston MA* (address), by mail or in person, **AND**
    b.  Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: *28 Nash Ave, Brockton MA 02301*

3.  **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

**|Daphne**

# Chikel

**28 Nash Ave**
**Brockton, MA 02301**
**|781.901.9836 | daphne.chikel@yahoo.com**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                           SUFFOLK COUNTY SUPERIOR COURT
                                                               CIVIL ACTION NO.

Daphne Chikel,                              )
                                                      )
            Plaintiff,                         )
                                                      )
        v.                                        )      **COMPLAINT**
                                                      )
Steward Health Care System LLCHealth Care System,  )
                                                      )
LLC                                               )
                                                      )
            Defendant.                        )

_____

## INTRODUCTION

This is a Complaint under M.G.L.c. 151B, §4(1), (4), (16A), and Title VII of the Civil Rights Act of 1964 as amended for discrimination on the basis race/color (Black), sexual harassment and retaliation. The Defendant, Steward Health Care System LLC terminated the employment of Plaintiff, Daphne Chikel on May 4, 2016.

## JURISDICTION

The Plaintiff, Daphne Chikel filed a complaint for discrimination with the Massachusetts Commission Against Discrimination on May 18, 2016.

The discriminatory act set forth in this complaint took place occurred at one of Defendant's corporate offices in 30 Perwal St, Westwood Massachusetts. The other corporate office is headquartered at 500 Boylston St Boston, Massachusetts.

This Court has jurisdiction pursuant to M.G.L.c. 151B, §9.

| Daphne
# Chikel
28 Nash Ave
Brockton, MA 02301
| 781.901.9836 | daphne.chikel@yahoo.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    SUFFOLK COUNTY SUPERIOR COURT
                                               CIVIL ACTION NO.

## STATEMENT OF FACTS

The Plaintiff, Daphne Chikel (black) has worked for Steward Health Care System LLC since September 10, 2010. She went above and beyond her job duties taking on additional assignments outside her scope of work. Ms. Chikel had outgrown her position as Supply Chain Administrative Assistant and was supporting seven individuals: Eric Berlin (white) VP of Supply Chain, Anne Nelson (white) Director of Supply Chain, Kerry Cummings (white) Director of Clinical Value Analysis, Tony Allen (black) Director of Purchasing, Robert Guerard (white) Director of Sourcing & Contracting, Robert Irvine (white) Manager of Sourcing & Contracting and Pam Mimms Cox (black) Senior Director of Pharmacy. Furthermore, Ms. Chikel was the Chairman of the Westwood Service Excellence Committee helping to improve work place camaraderie and was also the Steward Blood Drive Coordinator. In spite of the egregious & hostile work conditions and being under paid, Ms. Chikel continued to work successively in her position and continued to receive positive work evaluations from her direct Supervisor Tony Allen. Ms. Chikel demonstrated professionalism and was never reprimanded for any actions. It is clearly evident given Ms. Chikel's record that she took pride in her work.

At the request of Keri McCrensky (white) Interim V P of Supply Chain, Ms. Chikel documented her daily activities on the Issue Tracker, an Excel spreadsheet. Ms. Chikel was told at the time that the Issue Tracker tool would be used to measure her job performance. However, Ms. Chikel found it odd that she was the only individual filling out the tracker and addressed her concerns with Ms. McCrensky. Ms. McCrensky in turn led the Plaintiff to believe she was being considered for the newly created Project Manager role. Ms. McCrensky and Ms. Nelson claimed Nicole Maddocks, the hired temp was also using

Daphne
# Chikel
28 Nash Ave
Brockton, MA 02301
781.901.9836 | daphne.chikel@yahoo.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                              SUFFOLK COUNTY SUPERIOR COURT
                                                         CIVIL ACTION NO.

the Issue Tracker. Ms. Maddocks at the time was helping to upload agreements electronically onto the Supply Chain shared drive. Ms. Chikel found it difficult to believe Ms. Maddock was filling out the tracker. There was a steady decline in Ms. Chikel's responsibilities from March 1, 2016 through May 2, 2016 due to the fact that Ms. McCrensky and Ms. Nelson was deliberately having the Plaintiff list her job responsibilities only to re-assign them to Ms. Maddocks. Both Ms. McCrensky and Ms. Nelson would schedule meetings with Ms. Chikel to discuss the Issue Tracker and would include Mr. Allen. Ms. Chikel in these meetings was interrogated, berated and belittled by both Ms. McCrensky and Ms. Nelson. Ms. McCrensky mentioned in one meeting that Eric Berlin would not have the same patience he would towards Ms. Chikel. This is significant because Ms. Chikel had discussed in confidence with Ms. McCrensky that she did not feel comfortable around Mr. Berlin because of what occurred in the past leaving out the details. At that time, Ms. McCrensky claimed she did not know Mr. Berlin.

On March 31, 2016, Ms. Chikel met separately with Mary Ann Gabriel (white), HR Assistant and Sasha Corken (white) HR Advisor to discuss her complaint against Ms. McCrensky and Ms. Nelson for being treated unfairly. Ms. Chikel had asked Ms. Corken not to discuss her complaint with Ms. McCrensky. It was revealed in the Defendant's position statement that Ms. Corken told Ms. McCrensky about the Plaintiff's concerns which proves that HR is not only unable to handle complaints and use discretion, they violated their anti-retaliation policy when Ms. Chikel was terminated from employment [**please refer to Exhibits GG, PP**].

Moreover, Mr. Allen informed Ms. Chikel he was instructed by Ms. McCrensky not to assign any more tasks to her. On April 26, 2016, an email communication was submitted to the Supply Chain team letting them know Ms. Maddocks will be taking over the business associate (BAA) project, which Ms. Chikel oversaw. The subject line reading: Handoff to Nikki [**please refer to Exhibits N, O**].

|Daphne
**Chikel**
28 Nash Ave
Brockton, MA 02301
|781.901.9836 | daphne.chikel@yahoo.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    SUFFOLK COUNTY SUPERIOR COURT
                                               CIVIL ACTION NO.

Ms. Maddocks was hired as temp to assist with storing all agreements electronically on November 2015.

She was permanently hired and promoted to Supply Chain Clerk on March 31, 2016. Ms. Chikel has

provided a screenshot of Ms. McCrensky's calendar invite to Ms. Nelson about devising a plan to

permanently hire Ms. Maddocks. Ms. Chikel still had access to Ms. Nelson's email at the time. Through

reliable sources, Ms.Chikel was informed that Ms. Maddocks was promoted on June 20, 2016 to Contract

Administrator. In 2013, Ms. Chikel was promoted to Contract Administrator by Mark Scheftel, former

VP of Supply Chain due to an audit that was performed which suggests all agreements be held in one

centralized location. Ms. Chikel in her rebuttal to the Defendant's position statement provided a copy of

the Contract Administrator flow chart she was asked by Mr. Scheftel to create showing the contract flow

process. However, there was no paper trail, even though the Plaintiff was already performing the

responsibilities of a Contract Administrator. On February 12, 2016, in an email submitted by Ms.

McCrensky made it clear that she wanted Ms Chikel to remain an Administrative Assistant. A similar

situation [but different outcome] had transpired with Ms. Cummings (white) who was hired as the

Director of Clinical Value Analysis but there was no paper trail. Her job role did not exist in the system.

Ms. Chikel provided a copy of an email sent by Ms. Cummings on August 25, 2015 wanting the Plaintiff

to contact HR in regards to her title. Ms. Cummings was able to keep her title [**please refer to Exhibits**

**E, D, M, T, QQ**].

Ms. Chikel was sexually harassed by Eric Berlin, VP of Supply Chain between November 11, 2014 and

October 14, 2015. He sent an email to Ms. Chikel wanting her to plan lunch for the both of them on April

23, 2015 subject line reads: Touching Base. This email was inappropriate and made Ms. Chikel very

uncomfortable. Mr. Berlin displayed a pattern of this behavior where he also asked a fellow colleague to

have drinks with him after hours. Ms. Chikel was shown this email in confidence. In another email

Daphne

**Chikel**

28 Nash Ave
Brockton, MA 02301
781.901.9836 | daphne.chikel@yahoo.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    SUFFOLK COUNTY SUPERIOR COURT
                                               CIVIL ACTION NO.

correspondence from Mr.Berlin, Ms. Chikel was told to get him some mint chocolate chip ice-cream with a wink emoticon. To be clear, Mr.Berlin was out of the office that day and a wink emoticon is often associated with flirting and sexual insinuations. When Ms. Chikel did not respond favorably to his requests, he became belligerent and possessive verbally attacking her in meetings. Ms. Chikel became fearful of Mr. Berlin and tried to avoid her interactions with him even though she reported to him. On April 28, 2015, Mr. Berlin emailed another Administrative Assistant upset with her for sharing Ms. Chikel's contact information with a vendor. Ms. Chikel was managing Mr. Berlin's calendar and would be the point of contact for vendors looking to schedule a meeting with him. Sometime in June of 2015, another incident with M. Berlin occurred when he privately disclosed to Ms. Chikel in his office that he hired two female employees (Anne Nelson and Kerry Cummings) to join the Supply Chain department and that he was gender neutral. Ms. Chikel was taken aback by his comment and was unsure why he needed to share this information with her. On August 26, 2015, Ms. Nelson gave Ms. Chikel her expense report to have Mr. Berlin approve and sign off. When Ms. Chikel brought the expense report for Mr. Berlin to review and sign. He looks at Ms. Chikel and says "You'd think I was sleeping with her," and adds "that he did not need his hotel room and gave it to Anne." Ms. Chikel was stunned speechless by his omission. Mr. Berlin would comment on Ms. Chikel's hair being down and not in a pony tail or braids. He would also follow close behind Ms. Chikel as she walked and she would catch him staring at her behind. On February/May 2015, Mr. Berlin on a phone conversation with Ms. Chikel stated he really liked her and wanted to keep her around. Mr. Berlin shared that he would do what he could to help alleviate some of Ms. Chikel's job duties. Mr. Berlin was able to access the Plaintiff's desktop where Ms. Chikel noticed her work files were often moved around and found in random folders. Ms. Chikel, was fearful and felt violated by Mr. Berlin who borderline was stalking her. Ms. Chikel discussed this issue with a reliable

| Daphne
**Chikel**
28 Nash Ave
Brockton, MA 02301
781.901.9836 | daphne.chikel@yahoo.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                     SUFFOLK COUNTY SUPERIOR COURT
                                                CIVIL ACTION NO.

source in the Information Technology department who reluctantly shared that an individual was indeed

able to move and delete files if given access to one's computer.

Ms. Chikel notified Andrea Berube (white) from the HR Supervisor via a phone conversation of the

sexual harassment events on July 15, 2015 and mentioned the emails that Mr. Berlin sent to her. Ms.

Berube replied that she did not see anything wrong with Mr. Berlin asking Ms. Chikel out to lunch. She

even suggested that Ms. Chikel speak with Mr. Berlin. Ms. Berube also shared that M. Berlin never acted

strangely around her and that he was really a nice person. Ms. Chikel was never taken seriously. In fact,

Ms. Berube never scheduled a follow-up meeting to discuss the complaint in person and/or conducted an

investigation. Ms. Chikel was notified that Mr. Berlin was terminated on October 14, 2015 due to his job

performance not due to the sexual harassment complaints brought on by Ms. Chikel and fellow colleague.

Steward Health Care System LLC was focused on protecting Mr. Berlin and his reputation with his

employer Cerberus [a private equity firm that acquired Caritas Christi now known as Steward Health Care

System LLC]. There were also rumors that Steward Health Care System LLC covered up other sexual

harassment complaints at their 500 Boylston street corporate office [ **please refer to Exhibits A, B, C,**

**U**].

On March 2, 2016, in a quarterly staff update meeting with Mr. Allen. The Quarterly Staff meeting is a

one on one meeting Tony held with his team to see if anyone had any concerns that they wanted to

address. Mr. Allen asked if Ms. Chikel received an increase in pay. Since Ms. Chikel was paid $38K per

year. He disclosed that Ms. Nelson mentioned her new salary would be $45K. Ms. Chikel told Mr. Allen

that her salary was only increased to $42,494.40. Ms. Chikel found it rather suspicious that Ms. Nelson

would lie about her salary amount.

| Daphne
**Chikel**
28 Nash Ave
Brockton, MA 02301
781.901.9836 | daphne.chikel@yahoo.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                         SUFFOLK COUNTY SUPERIOR COURT
                                    CIVIL ACTION NO.

On April 28, 2016, Ms. Chikel met with Sasha Corken despite the fact that she wanted to meet with the VP of HR and VP of Compliance & Privacy in regards to her complaints against Ms. McCrensky and Ms. Nelson. Ms. Corken assured Ms. Chikel that she would conduct a proper investigation and bring the information to the VP of HR and VP of Compliance & Privacy if necessary. Ms. Chikel also gave Ms. Corken a list of six individuals to help support her complaint in regards to the negative work environment. Ms. Corken assured Ms. Chikel that she did not need to worry about losing her job. Ms. Corken claimed she would place Ms. Chikel in another department. When Ms Chikel was terminated on May 4, 2016, she asked Ms. Corken if she had completed her investigation and she replied no. Ms. Chikel was terminated in a middle of an investigation that Ms. McCrensky and Ms. Nelson had knowledge of which is considered retaliation.

Ms. Chikel's job performance and productivity was never a concern and was not a factor in her termination of employment for the following reason (s);

- Ms. Chikel was told by Ms. McCrensky that she was being considered for the Project Manager position.

- On Feb, 2016, Ms. McCrensky asked for Ms. Chikel to assist with managing her calendar before it was given to another Administrative Assistant **[please refer to Exhibit KK]**.

- On March, 21, 2016, Ms. McCrensky sent out an email communication to the Supply Chain group celebrating both the work of Ms. Chikel and Ms. Maddocks on managing to e-file all physical documentation for a project **[ please refer to Exhibit J]**.

- Ms. Chikel never received negative job evaluations from her managers.

These reasons further proves that Ms. Chikel was discriminated against on the basis of race, color and sex which is a direct violation of the Title VII of the Civil Right Act of 1964.

| Daphne
**Chikel**
28 Nash Ave
Brockton, MA 02301
| 781.901.9836 | daphne.chikel@yahoo.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUFFOLK COUNTY SUPERIOR COURT
                                               CIVIL ACTION NO.

Ms. Chikel sought relief by filing her complaint with MCAD under M.G.Lc151B (4)(16A) and Title VII

of the Civil Rights of 1964 on May 18, 2016.

## FINDINGS

The Massachusetts Commission Against Discrimination after conducting an investigation and analysis

found probable cause in the complaint filed against the Defendant on January 9, 2018. The Defendant

failed to provide sufficient evidence to validate their reasons for terminating the employment of the

Plaintiff **[please refer to Exhibit OO]**.

## LEGAL ANALYSIS

Title XXI of Chapter 151B Section (4) Unlawful discrimination based on race, color, religious creed,

national origin, sex, gender identity, sexual orientation to refuse to hire or employ or to bar to discharge

from employment such individual or to discriminate against such individual in compensation or in terms;

conditions or privileges of employment, unless based upon a bonafide occupational qualification.

a) Ms. Chikel was paid less than white fellow colleagues. Despite, taking on more responsibilities outside

the scope of work, years of experience and educational background.

b) White employees at Steward Health Care System LLC received preferential treatment over minorities.

There were less minorities in leadership positions. This is evident in the aforementioned statement of facts

when Ms. Chikel's new title was not acknowledged by Ms. McCrensky because there was no paper trail.

However, Ms. Cummings was able to keep her title even though there was also no paper trail.

Title XXI Chapter 151 Section 19 (1) Any employer and his agent or the officer or agent of any

corporation who discharges or in any other manner discriminates against an employee, including any

| Daphne
**Chikel**
28 Nash Ave
Brockton, MA 02301
781.901.9836 | daphne.chikel@yahoo.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                          SUFFOLK COUNTY SUPERIOR COURT
                                                     CIVIL ACTION NO.

employee in the domestic service of any family or person at his home because such employee has

complained of a violation of the provisions of this Chapter or has testified or is about to testify in any

investigation or proceeding under or related to this Chapter or because such employer believes that said

employee or individual may complain of a violation of the provisions of this Chapter, shall have violated

this section and shall be punished or shall be subject to a civil citation or order as provided in section 27c

of Chapter149, and shall be liable for damages.

The law is clear. It is illegal to retaliate against a person because the person complained about

discrimination, filed a charge of discrimination investigation or lawsuit:

A) On July 15, 2015- Ms. Chikel notified HR about sexual harassment events.

B.) On, Feb 23, 2016- Ms. Chikel notified Ms. McCrensky in regards to Anne trying to get rid of her.

C.) On March 31, 2016- Ms. Chikel met separately with Mary Ann Gabriel (HR Assistant) and Sasha

Corken about being singled out by Ms. McCrensky and Ms. Nelson.

D.) On April 28, 2016, Ms. Chikel met with Sasha Corken despite the fact she wanted to meet with the

VP of HR and the VP of Compliance & Privacy. Ms. Corken assured Ms. Chikel at the time that she

could handle Ms. Chikel's complaint and start an investigation.

Ms. Chikel has filed numerous complaints in regards to the discrimination acts and adversely was

terminated. Steward Health Care System LLC violated their internal discrimination & compliance

policies and procedures as well as state and federal laws when they refused to adequately address the

complaints of Ms. Chikel and failed to provide a remedy or relief as described herein.

**THE PRIMA FACIE CASE**

‖Daphne
## Chikel
**28 Nash Ave**
Brockton, MA 02301
‖781.901.9836 | daphne.chikel@yahoo.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                   SUFFOLK COUNTY SUPERIOR COURT
                                              CIVIL ACTION NO.

The Plaintiff must establish a prima facie case of discrimination. In McDonnell Douglas Corp. v. Green

U.S. 792 (1973) a four point test was established by the Plaintiff to show a prima facie case of

discrimination. The Plaintiff must show the following:

1. The Plaintiff belongs to a class protected by Title VII;

2. The Plaintiff was qualified for his/her position;

3. The Plaintiff, despite being qualified, was rejected; Plaintiff experienced an adverse employment
   action;

4. Similarly situated individuals outside his/her protected class were treated more favorably, or other
   circumstances surrounding the adverse employment action give rise to an inference of
   discrimination.

The facts of this case easily fits this four point test, which enables Ms. Chikel to demonstrate a prima

facie case of discrimination. First under the Title VII, discrimination based on race, color, sex or national

origin are all prohibited. Ms. Chikel falls within each of these protected classes as she is Cuban Haitian

American, black and a female.

Second, the facts show that Ms. Chikel was not only qualified but has surpassed the job requirements of

her job role as Supply Chain Administrative Assistant. She received exceptional work evaluations and

was given additional responsibilities outside the scope of work. Ms. Chikel has been employed with

Steward Health Care System LLC close to six years before she was wrongfully terminated. Ms. Chikel's

qualifications and work performance was never disputed [**please refer to Exhibit E, H, G**].

Third, Ms. Chikel suffered from adverse employment action when she notified Steward Health Care

System LLC of the discrimination acts that has occurred against her. Ms. Chikel was berated, belittled

and alienated by her former employer despite the fact that she was the victim of discrimination in this

Daphne

# Chikel

28 Nash Ave
Brockton, MA 02301
781.901.9836 | daphne.chikel@yahoo.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                          SUFFOLK COUNTY SUPERIOR COURT
                                                     CIVIL ACTION NO.

case. She was not allowed to keep her promotion and was under paid. Her responsibilities was

intentionally given to another individual who was white and less experienced and did not have a college

degree. In addition, Ms. Chikel was removed from key meetings. Ms. Chikel was wrongfully terminated

in retaliation while those that invoked the acts remained employed at Steward Health Care System LLC.

Mr. Berlin was removed from Steward Health Care System LLC. However, he was still employed by

Cerberus and was still engaged in phone conversations with Ms. Nelson. It is believed that she was still

being advised or sought advisement from him.

Fourth, there was an established pattern of discrimination and preferential treatments of those outside of

the protected class as highlighted below:

- Kerry Cummings (white) was hired as a Director of Clinical of Value Analysis. However, the
  position did not exist in the system according to Andea Berube in an email sent 8/26/2015. In the
  system she was considered the Director of Contracts, the same title as Robert Guerard while he
  was employed at Steward Health Care System LLC. Ms. Chikel had experienced a similar
  situation but different outcome when she was promoted to Chief Contracts Administrator by
  Mark Scheftel but there was no paper trail. Keri McCrensky wanted Ms. Chikel to keep her title
  as Supply Chain Administrative Assistant.

- Zachary Lefoll (white) was supposedly hired to take Tonia Bly's (black) position as a Purchasing
  Assistant after she had resigned from Steward Health Care System LLC. The Supply Chain team
  found out afterwards he was hired to replace Mark Bagdasarian as a Capital Buyer. Mr.
  Bagdasarian's position was never posted internally. The Purchasing team was never given the
  opportunity to apply for Capital Buyer position especially Donna Reid (black) who had
  experience working with capital. She was the one who trained Mr. Lefoll.

- Nicole Maddocks (white) a temp who was promoted to Supply Chain Clerk on March 31, 2016
  and then to Contract Administrator on June 20, 2016. While Ms. Chikel (black) was more
  qualified due to experience and educational background took on multiple responsibilities without
  an increase in pay, be belittled and harassed before being considered for a promotion.

Daphne

**Chikel**

28 Nash Ave
Brockton, MA 02301
781.901.9836 | daphne.chikel@yahoo.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                              SUFFOLK COUNTY SUPERIOR COURT
                                                         CIVIL ACTION NO.

- Tony Allen (black) Director of Purchasing reports to Anne Nelson (white) Director of Supply Chain. It does not make sense for a Director to report to another Director.

- A female employee (black) applied for an HR position to move up from her current position. However, the HR Administrative Assistant role was given to a temp (white).

- There are rarely any individuals of color who hold VP/ Senior positions within Steward Health Care System LLC.

- William Heanue (white) was a Purchasing Assistant who was quickly promoted to Contract Analyst.  While the Purchasing team and the Plaintiff was never considered for the position.

- Eric Berlin (white) sexually harassed Ms. Chikel (black) and another black female. He did not target any white females to Ms. Chikel's knowledge.

Each of these acts in total create a clear inference of racially motivated animus and discriminatory impulse on the part of Steward Health Care System LLC.


## THE BURDEN-SHIFTING ARGUMENTS


Under the general framework, the Defendant must provide a reason which is legitimate and non discriminatory for the adverse employment action which was taken against Ms. Chikel. To date, the Defendant have provided no plausible reason for their adverse actions for which Ms. Chikel suffered. The Defendant's position statement was inadequate and did not provide sufficient cause for the adverse actions taken against Ms. Chikel. The Plaintiff was terminated after filing a complaint against the individuals involved. Furthermore, Ms. Chikel faced adverse action while engaged in protected activity or conduct which the law specifically protects from retaliation. Protected conduct includes employee complaints or reports of unlawful conduct, as well as employee participation in proceedings involving the law.

| Daphne
**Chikel**
28 Nash Ave
Brockton, MA 02301
|781.901.9836|daphne.chikel@yahoo.com

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    SUFFOLK COUNTY SUPERIOR COURT
                                               CIVIL ACTION NO.

Moreover, HR and Compliance policies encourages employees to report discrimination, sexual

harassment, illegal activities and unsafe work conditions under the guise that the employee would be

protected from retaliation. This proved false in Ms. Chikel's case especially when she acted in reasonable

& good faith and took the appropriate steps to report discrimination acts.


### DAMAGES


The Plaintiff has suffered emotional distress as a result of the harsh and hostile work environment.

Factors to be considered include, but not limited: (1) the nature and character of the alleged harm; (2) the

severity of the harm; (3) the length of time the Plaintiff has suffered and reasonably expects to suffer, and

(4) whether the Plaintiff attempted to mitigate the harm (e.g. by counseling or by taking medication).

Ms. Chikel had endured a hostile and offensive work environment for a period of three (3) years which

negatively impacted her health. The Plaintiff suffers from the following: depression, anxiety, panic

attacks, low self-esteem, insomnia (which impacted her cognitive abilities and memory), post-traumatic

stress disorder, isolation, weight gain, self doubt, distrust and a fatal health condition [long term] through

a misdiagnosis by primary care doctor at Steward Health Care System LLC. The Plaintiff's doctors are

aware of her ailments and have prescribed medication(s) and /or suggested treatment.


### PRAYER FOR RELIEF

Daphne
# Chikel
**28 Nash Ave**
Brockton, MA 02301
781.901.9836 | daphne.chikel@yahoo.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.
SUFFOLK COUNTY SUPERIOR COURT
CIVIL ACTION NO.

WHEREFORE, the Plaintiff respectively pray for a judgment against the Defendant for emotional distress

damages, compensatory damages, punitive damages and any other relief as the Court deems appropriate

for the amount of $10 million dollars.

Respectfully Submitted,

Daphne Chikel

Plaintiff

:File

CC: Bowditch & Dewey, LLP
175 Crossing Boulevard
Suite 500
Framingham, MA 07102

Chikel v. Steward Health Care System LLC 14

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

Date:  JAN - 9 2018

Darlene Chalei
27 Neis Avenue
Brockton, MA 02301

RE: Darlene Chalei v. Steward Heath Care
MCAD Docket Number: 16BEM01283
EEOC/HUD Federal Charge Number: 16C-2016-01527

PROBABLE CAUSE FINDING

Dear Parties/Counsel:

You are hereby notified that I have found probable cause to credit the allegations in the above-referenced complaint.
A copy of the disposition is enclosed.

The Commission is charged by statute (G.L. c.151B, § 5) to try to enforce compliance with the Commonwealth's anti-discrimination laws without resort to a public hearing. To this end, parties and counsel are required to attend a conciliation conference at the Commission's office on  Modday  Februdy 26, 2018 (0 am with a Designee or the Investigating Commissioner.

Conciliation is difficult or impossible unless persons with authority to settle the case are present. The officer designated to appear for a business or other entity must be familiar with the case and authorized to offer an appropriate conciliation settlement.

Complainant's counsel should send a written proposal of settlement to Respondent's counsel not less than 10 days before the scheduled meeting. We also require that parties hold preliminary settlement discussions at least five days before the conciliation date.

You are advised that unless a formal offer of settlement by a Respondent is acceptable to the Commission but not to the Complainant, the Commission may close the matter pursuant to 804 CMR 1.18. Parties should make a good faith effort toward resolution during these preliminary settlement discussions, and are encouraged to make reasonable settlement offers and demands.

Be prepared to spend one to two hours at the conciliation session. Failure to attend the session may result in immediate certification to public hearing and/or imposition of sanctions for costs incurred by the Commission and the opposing party. Furthermore, Complainant's failure to attend may result in dismissal of the case.

No conference will be granted except upon written motion to the Conciliation Clerk with notice to the opposing party and upon a showing of good cause. Please direct correspondence to Vanessa Davila via fax at (617) 994-6024.

Very truly yours,

Sunila Thomas George
Investigating Commissioner

Cc:
Robert Young, Esq.
Brownlíow & Brewcy, LLP
175 Crossing Boulevard, Suite 500
Framingham, MA 01702

Steward Health Care
Attn: Department of Human Resources
30 Pawnal Street
Westwood, MA 02090

MCAD Docket Number: 16BEM01283, Probable Cause Cover Letter

Page 1

EXHIBIT CC

**INVESTIGATIVE DISPOSITION**

Case Name:              Daphne Chikel v. Steward Health Care System LLC
MCAD Docket No.:        16BEM01283
EEOC Docket No.:        16C-2016-01527
No. of Employees:       25+
Investigator:           Sulin Hau, Compliance Officer III
Recommendation:         Probable Cause

Introduction

On May 18, 2016, Complainant filed the instant complaint alleging that Respondent
Steward Health Care System LLC discriminated against her on the basis of her race/color
(Black), subjected her to sexual harassment, and retaliated against her in violation of
M.G.L. c. 151B, § 4(1), (4), (16A), and Title VII of the Civil Rights Act of 1964, as
amended.

Complainant's Allegations

Complainant alleges as follows. Complainant identifies herself as a Black female. On
September 10, 2010, Complainant began working for Respondent as an Administrative
Assistant. Complainant performed her job duties satisfactorily. While working in this
position, Complainant experienced sexual harassment by her supervisor Eric Berlin, Vice
President of Supply Chain, until Berlin's employment was terminated on October 14,
2015. For example, Berlin commented that he liked Complainant's hair down. On one
occasion, Berlin asked Complainant to lunch. On another occasion, Berlin sent
Complainant an email asking to get him ice cream using a winking smiley face. On an
unidentified date, Berlin called Complainant on the telephone stating that he really liked
her and that he wanted to keep her around. Berlin asked Complainant what could be done
to make her life easier so that she could keep her around. Complainant simply said
"okay" and hung up the phone. After Complainant did not respond to Berlin's such
requests, he became "rather hostile" and began "verbally harassing" Complainant in
meetings. On July 16, 2015, Complainant reported Berlin's conduct to Human Resources
Advisor Andrea Berube. Berube stated that she would file a complaint for Complainant,
but the harassment continued until Berlin left the company in October 2015.

On March 1, 2016, Keri McCreasky (White), the Vice President of Supply Chain, and
Anne Nelson (White), Director of Supply Chain Operations, asked Complainant to track
all of her job duties. Complainant was told that she was being considered for a Project
Manager position and they needed to know exactly what she did to reassign the work.
Around this time, McCreasky and Nelson began having a temporary employee, N.M.
(White) perform some of Complainant's job duties. Also around this time, Complainant

1

was being excluded from meetings. In April 2016, Complainant learned that McCreasly had told Complainant's direct supervisor Tony Allen to stop assigning work to her.

On April 28, 2016, Complainant met with HR Advisor Sadan Corken and complained of Berlin's sexual harassment and being excluded from meetings. Corken stated that there would be an investigation. On May 4, 2016, Complainant met with McCreasly, Corken, and Allen, who informed Complainant that her job was being eliminated and that she was being laid off. Upon information and belief, N.M., a former temporary employee, has been hired as a full-time employee to perform Complainant's job duties. N.M. was given a newly created job title of Supply Chain File Clerk. Other Black employees had been passed over for promotions, which were given to White employees. Receptionist L.G (Black) was not chosen for the HR Administrative Assistant position, which was given to a White temp employee. A White employee was hired for a Capital Buyer position before D.R. (Black) could apply for the job. The Director of Purchasing T.A. (Black) is the only director who has to report to another director A.N. (White), Director of Supply Chain.

Therefore, Complainant alleges that Respondent subjected her to sexual harassment, and discriminated against her on the basis of her race/color by selecting her for lay off. Complainant further alleges that Respondent laid her off in retaliation for complaining of sexual harassment.

## Respondent's Position

Respondent asserts as follows. Respondent is a health care organization providing care through ten hospital campuses, 24 affiliated urgent care locations, and 3000 physicians. Respondent is committed to promoting a workplace free from discrimination, harassment, and retaliation. Respondent denies that it discriminated against Complainant on the basis of her race/color, subjected her to sexual harassment, or retaliated against her.

In September 2010, Respondent hired Complainant as an Administrative Assistant in the Supply Chain Department. The Supply Chain Department is responsible for negotiating and storing contracts for services and goods for the entire company. Complainant was primarily responsible for providing administrative support to the contracting and purchasing departments within the Supply Chain Department, including answering phone calls, opening mail, coordinating schedules and drafting routine correspondence.

On July 17, 2015, Complainant sought a meeting with Andrea Berube in Human Resources Department. At this meeting Complainant raised a concern that several actions by then-Vice President of Supply Chain Eric Berlin were making her uncomfortable. When asked for specifics, Complainant responded that in late April 2015, Berlin commented that she needed more Visio (a Microsoft program for creating flow charts and other organizational diagrams) experience and that he would arrange a lunch for the two of them to discuss it. In June 2015, Berlin responded to an announcement from Complainant that an ice cream truck was at the Westwood facility by asking her to get him some mint chip ice cream and

2

ending his email message with a "winking" emoticon. Complainant identified other ambiguous comments such as "you know, I like you."

Notwithstanding the lack of any factual allegations to suggest sexual harassment, Berube took Complainant's concerns seriously. However, Complainant did not want Berube to do anything, but rather claimed that she just wanted to put Berlin's comments "on record." Nevertheless, Berube spoke with Deborah Bradshaw, Vice President of HR, about the concerns. Bradshaw relayed that another employee recently had complained about Berlin's "management style." Ultimately, Respondent terminated Berlin's employment in October 2015 as a result of the other employee's complaint about him.

In July 2015, Anne Nelson began working as the Director of Supply Chain Operations. Nelson met with employees in her group to gain a better understanding of the positions. In their initial meeting, Complainant mostly conveyed to Nelson that she believed she was underpaid. Nelson looked into the matter. In October 2015, Nelson approved a nearly 8% salary increase for Complainant. Despite her desire for greater compensation and the claimed wish for more responsibility, Complainant often resisted many job duties. For example, in late 2015, Nelson asked Complainant to begin scanning contracts and capital purchase orders that Steward had accumulated over the years into an electronic file. Complainant responded by claiming that Respondent should hire a temporary employee to complete that task. Respondent did in fact ultimately hire N.M. to complete this task.

In January 2016, Keri McCrensky began working as the Vice President of Supply Chain. Among her first tasks, McCrensky sought to stabilize the department. In particular, McCrensky wanted to ensure that employees were performing necessary duties and using job titles that reflected their actual positions. McCrensky noticed that Complainant was using the title "Contract Administrator" in her email signature. McCrensky asked Complainant to use her correct title Administrative Assistant.

In late February 2016, Complainant asked to meet with McCrensky. In this meeting Complainant claimed that Nelson did not think that Complainant did much work, and that Nelson did not "like" her. Complainant did not base this belief on any protected class. In response to Complainant's own concerns about her productivity not being valued, McCrensky asked her to track her job duties. Such performance tracker was a common management tool McCrensky used. Within a few weeks, Complainant complained that she was being "judged out" by having to complete the performance tracker. McCrensky responded that N.M. and McCrensky herself were completing performance tracker at the time.

On March 31, 2016, Complainant met with Sasha Corden, Director of HR, and claimed that she was being treated differently since Nelson joined the Supply Chain Department giving the performance tracker as an example. However, Complainant did not claim any discrimination or retaliation. Corden looked into the matter and learned that Complainant was not the only employee who was asked to complete performance tracker. On April 28,

2016, Corken met with Complainant and at this meeting, Complainant again raised her complaint of sexual harassment by Berlin from several months ago. Complainant now for the first time alleged that on one occasion she caught Berlin staring at her behind when she walked in front of him. At this meeting, Complainant also claimed that she had "outgrown" her Administrative Assistant role, and was interested in becoming either an Executive Assistant or a Program Manager. Complainant also, for the first time, alleged race discrimination. However, she did not identify any specific comment or incident, other than stating that the "new" employees received more favorable treatment than "old" employees in the department. Complainant identified six employees who she believed could support her allegation of "negative" work environment. Corken reached out to the six employees and was able to meet with three, but the other three did not respond to Corken. In interviewing the three employees, Corken did not receive a single complaint of alleged race discrimination in the position.

Ultimately, in light of Complainant's limited productivity, Respondent decided that her Administrative Assistant position was not necessary for the Supply Chain Department. Accordingly, Respondent eliminated Complainant's position on May 4, 2016. Respondent has not hired anyone to replace Complainant, and there are no plans in the foreseeable future to add the position.

Summary of Investigation and Analysis

Sexual Harassment

In order to establish a claim of unlawful sexual harassment, Complainant must establish that (1) she was the target of unwelcome speech or conduct of a sexual nature; (2) the speech or conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment; and (3) the harassment was carried out by an employee with a supervisory relationship to Complainant or Respondent knew or should have known of the harassment and failed to take prompt remedial action.

Complainant alleges that the former VP of the Supply Chain Department, Berlin, sexually harassed her. It is undisputed that Berlin was a supervisor to Complainant, and therefore Respondent may be liable for Berlin's conduct whether or not it had notice. Taking Complainant's allegations as true, the conduct by Berlin, namely, commenting that he likes Complainant's hair down, commenting that he really likes her and that he wants to keep her, and suggesting going to lunch alone, may be of a sexual nature. It is undisputed that Complainant complained of Berlin's conduct in July 2015, at which time Respondent did not take any action.

During the Commission's investigation, Complainant also indicated that she knew of another female employee who was subjected to Berlin's similar, frequent unwelcome conduct of a sexual nature, which made the work environment more sexually hostile. Investigation reveals that this other female employee complained to Bradshaw, Vice

4

President of HR, of Berlin's in a September 22, 2015 email that Berlin had asked her whether her husband "buys her whips and chains." Respondent asserts that it terminated Berlin's employment on October 14, 2015 in light of this female employee's complaint, but not Complainant's allegations.

Complainant alleges that the conduct directed at her continued until Berlin's termination on October 14, 2015. Taken as a whole, the conduct could make a person in Complainant's position uncomfortable and alter the conditions of her employment. Given that Respondent may have been aware of another complaint of sexual harassment and as a result terminated Berlin's employment, there may be sufficient evidence at this time to support Complainant's claim. A dispute of material fact remains as to whether Complainant was subjected to the alleged conduct. This dispute must be reserved for a fact finder at public hearing.

*Disparate Treatment – Race/Color*

To establish a prima facie case for disparate treatment based on race/color, Complainant must establish that she is a member of the protected class and that she was treated differently from similarly situated individuals not of her protected class with respect to a term or condition of employment, or circumstances give rise to a reasonable inference of discrimination based on her protected class. If Complainant establishes a prima facie case, Respondent may show either that Complainant was not being treated differently than others, or that there are legitimate, non-discriminatory reasons for the different treatment that Complainant received. If Respondent succeeds in offering such reasons, Complainant must then show that Respondent's reasons are pretextual.

Complainant identifies her race/color as Black. Complainant alleges that she was discriminated against when she was the only employee required to complete the performance tracker by Nelson beginning in March 2016. Respondent denies this allegation. Respondent asserts that McCreasky, who became the new VP of Supply Chain Department in January 2016, implemented the performance trackers to assess the productivity in efforts to stabilize the department. Respondent provided a list of ten other performance trackers. Complainant further alleges that Respondent laid her off, but (one Black, nine White) employees in the Supply Chain Department, who were completing replaced her with N.M. (White), which Respondent denies. Respondent asserts that it eliminated Complainant's Administrative Assistant position and accordingly terminated her employment, when it determined that Complainant's job had "limited utility in the department" and she had "limited productivity."

Respondent fails to provide sufficient evidence to support its reasoning for eliminating Complainant's job position and terminating her employment. Respondent provided a copy of a Personnel Change form on which it was noted that Complainant's termination was due to "involuntary RIF." Investigation reveals that no other employee's position was

eliminated in the same "RIF." Respondent failed to provide any evidence to support its reasoning for, or to establish a timeline as to when it decided to eliminate her job position.

Meanwhile, Complainant provides evidence to show circumstances supporting an inference of race/color discrimination and that Respondent's reasons for terminating her employment were pretextual. Investigation reveals that McCreasky hired N.M. (White) as a temporary File Clerk on February 29, 2016. During the Commission's investigation, Complainant provided a copy of a February 26, 2016 email titled "Help with Appointments" in which McCreasky sought Complainant's assistance. Complainant also provided a copy of a March 21, 2016 email in which McCreasky publicly thanked Complainant and N.M. for their scanning work, commenting it "an important job well done!" This evidence contradicts Respondent's assertion that Complainant's position had "limited utility."

In her rebuttal, Complainant alleges that her assigned tasks gradually declined between March 2016 and May 2, 2016, and that McCreasky and Nelson purposely had Complainant list her duties only to give them to N.M. To support this allegation, Complainant provided a copy of emails in which McCreasky asked either Complainant or the Supply Chain Department staff to send all contract agreements to N.M. as opposed to Complainant. Complainant also provided a copy of an April 26, 2016 email titled "Handoff to [N.M.]" which similarly shows that projects were being taken away from Complainant to be assigned to N.M.

During the Commission's investigation, Complainant provided a copy of a May 4, 2016 email from Anne Nelson to the Supply Chain Department staff announcing that this date was Complainant's last day as her position had been eliminated, and that "[the department] will be adding a Project Manager position...that will be in alignment with the department's longer term goals." Complainant also provided a screenshot of McCreasky's scheduled March 31, 2016 meeting to discuss "permanently hiring [N.M.]." Investigation reveals that thereafter, Respondent hired N.M. as a regular employee in the position of Project Administrator.

Disputes of material fact remain as to Complainant's performance, whether Complainant's position was eliminated, and whether Complainant was replaced by N.M. These disputes must be reserved for a fact finder at public hearing.

*Retaliation*

To establish a prima facie case for retaliation, Complainant must show that: (1) she engaged in a protected activity; (2) Respondent was aware that she had engaged in a protected activity; (3) Respondent subjected her to an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. If Complainant establishes the prima facie case, Respondent may show that legitimate, nondiscriminatory reasons exist for the adverse action. If Respondent succeeds

in offering such reasons, Complainant must then show that Respondent's reasons are pretextual.

It is undisputed that Complainant engaged in protected activity in July 2015 when she complained to HR of Berlin's conduct which she believed to be sexual harassment. Respondent also admits that in an April 28, 2016 meeting with Corken, Complainant "explicitly mentioned race discrimination" but did not provide any specifics besides her belief that "new" employees received more favorable treatment than "old" employees in the department. Complainant alleges that Respondent retaliated against her when it required her to complete a performance tracker in March 2016, and ultimately terminated her employment on May 4, 2016. Complainant therefore establishes a prima facie case of retaliation.

As discussed above, Respondent failed to provide any evidence to support its proffered reasons for eliminating Complainant's job position, and therefore terminating her employment. Respondent asserts that the other employee's complaint about Berlin was a sexual harassment claim, and that the other employee left her employment with Respondent in July 2016.

Disputes of material fact remain as to whether Complainant's position was eliminated, and whether Respondent terminated her employment in retaliation for her internal complaints. These disputes must be reserved for a fact finder at public hearing.

**Conclusion**

A finding of Probable Cause is recommended for Complainant's claims against Respondent for discrimination based on sexual harassment, race/color, and retaliation.

Sedin High
Investigator

Korey Mcspadill
Enforcement Advisor

**Disposition**

Pursuant to section 5 of the Massachusetts General Laws chapter 151B, and in conformity with the foregoing findings, I have this day determined that Probable Cause exists for crediting the allegations of the complaint against Respondent. Pursuant to Section 5 of M.G.L. c. 151B, the parties will be afforded an opportunity to participate in a conciliation conference at the Commission.

Simila Thomas George
Investigating Commissioner

_____
Date

4/29/17

Daphne Chief v. Steward Health Care System LLC
16SEM0188

**Daphne Chikel vs. Steward Health Care**

**Discrimination Case Exhibits**

MCAD Docket Number:16BEM01283
EEOC/HUD Federal Charge Number: 16C-2016-01527

**EXHIBIT A**
An email submitted by Mr. Eric Berlin dated April 23, 2015 subject line reads Touching Base. In this email conversation Eric wanted to plan for him and I to have lunch.

**EXHIBIT B**
An email submitted by Mr. Eric Berlin dated July 2, 2015 subject line reads Grandy's Ice-Cream truck. In this email Eric wanted me to get him a mint chocolate chip, if available with a wink emoji. He was out of the office when the ice-cream tuck made a stop at the Steward corporate office.

**EXHIBIT C**
In an email submitted by Mr. Eric Berlin dated April 28, 2015 subject line reads Re: Canceled: Cohealo/Steward meeting. Mr. Berlin gets upset with another Admin because she gave my contact info to vendors. I was managing Mr. Berlin's calendar at the time and found it odd.

**EXHIBIT D**
An email submitted by Keri McCrensky, Interim VP of Supply Chain dated February 12, 2016 subject line reads Title Adjustment. In the email conversation Keri wanted me to keep the Administrative Assistant title despite the fact that I was promoted in 2013.

**EXHIBIT E**
Chief Contracts Administrator flow chart, I was asked to design using Visio once I was promoted by Mark Scheftel former VP of Supply Chain.

**EXHIBIT F**
Contract Work flow chart, I was asked to design using Visio.

**EXHIBIT G**
I have a list that I entitled Daphne's Daily tasks that I had given to both Keri McCrensky and Ann Nelson which lists all my responsibilities.

**EXHIBIT H**
I have a copy of Steward's Administrative Assistant Job description.

**EXHIBIT I**
A copy of a letter requesting a salary increase submitted to HR on February 29, 2016.

**EXHIBIT J**
On March 21, 2016 Keri McCrensky sends an email out to the Supply Chain group celebrating the hard work of Nicole Maddock and I on e-filing all physical docs for a project. The subject line reads: Huge Milestone>Off Paper. This is significant because Steward's Lawyer in his response to MCAD states I was let go because I did not complete projects.

**Daphne Chikel vs. Steward Health Care**

**Discrimination Case Exhibits**

MCAD Docket Number:16BEM01283
EEOC/HUD Federal Charge Number: 16C-2016-01527

**EXHIBIT K**

I have a copy of an email intercepted dated November 13, 2015 of Nicole Maddocks hourly rate and resume. The subject line reads Nicole Maddocks- Admin- Steward Westwood.

**EXHIBIT L**
I have a letter copy of my hourly rate and salary which shows that I was being paid far less than Nicole.

**EXHIBIT M**
I screenshot of Keri McCrensky's calendar invite to Ann Nelson asking about devising a plan to permanently hire Nicole Maddock's. I believe Ann forgot that I had access to her calendar. The meeting was scheduled for Thursday March 31, 2016 from 12-1pm.

**EXHIBIT N**
Keri McCrensky submits an email to myself, Nicole Maddocks and Ann Nelson on April 26, 2016 letting us know that Nicole will take over the Business Associate Agreement (BAA) project moving forward. The subject line reads: Handoff to Nikki.

**EXHIBIT O**
Keri McCrenky send an email to the Supply Chain group letting them to know to send all contracts to Nicole from now on. The subject line reads: Send contracts to Nikki.

**EXHIBIT P**
A copy of a report I submitted to Sasha Corken from HR on April 28, 2016 of what I have been going though at Steward. She assured me that she would conduct an investigation.

**EXHIBIT Q**
A Doctor's note dated September 16, 2015  stating that I was depressed due to the hostile work environment.

**EXHIBIT R**
A copy of the Steward Severance notice. I would be unable to file a lawsuit against Steward if signed. I did not sign the notice.

**EXHIBIT S**
I received an email from Sasha Corken on May 23, 2016 wanted to know if I accepted the severance. This is significant because when I was let go from Steward on May 4, 2016. She told me I had only a week to sign the severance agreement to receive my remaining checks.

**EXHIBIT T**
In an email dated August 25, 2015 shows Kerry Cummings title was not created in the system.

2

**Daphne Chikel vs. Steward Health Care**

**Discrimination Case Exhibits**

MCAD Docket Number:16BEM01283
EEOC/HUD Federal Charge Number: 16C-2016-01527
**EXHIBIT U**
A copy of Anne's Expense report showing she had used the hotel room reserved under Eric
Berlin's name.

**EXHIBIT V**
A copy of an email date May 4, 2016 submitted by Anne Nelson to the Supply Chain group
about eliminating the Supply Chain Administrative Assistant position.

**EXHIBIT W**
A copy of an email dated July 30, 2015 where Eric wanted me to interview candidates which is
outside my job responsibilities.

**EXHIBIT X**
A copy of an email submitted by Eric dated August 12, 2015 in regards to interviewing
candidates. I was waiting on response from the Staffing agency and I believe I was on vacation
during this time.

**EXHIBIT Y**
Anne sends meeting invite to Supply Chain group notifying them that she will be working at 500
Boylston street corporate office on April 29, 2016. My name was left out of the attendees list.
Keep in mind that I submitted a formal complaint to Sasha Corken, HR Advisor on April 28,
2016.

**EXHIBIT Z**
FMLA Source letter approving my two week off due to surgery from 4/6/2016 though 4/19/2016.
Keri McCrensky and Anne Nelson became even more hostile once returned.

**EXHIBIT AA**
A copy of the Supply Chain Employee Roster.

**EXHIBIT BB**
Steward Termination Checklist.

**EXHIBIT CC**
A copy of profile for former supervisor Steve Basiliere's job title as the Director of Supply Chain
Operations as mentioned in report dated April 28, 2016 to HR. Steve was laid off and Anne
Nelson ended up getting the same title. This is an example of Steward's mistreatment of
employees.

**EXHIBIT DD**
A copy of Treated Unfairly letter submitted to HR.

3

## Daphne Chikel vs. Steward Health Care

## Discrimination Case Exhibits

**MCAD Docket Number:16BEM01283**
**EEOC/HUD Federal Charge Number: 16C-2016-01527**
**EXHIBIT EE**
I submitted an email to Keri McCrensky dated February 19, 2016 letting her know I was working on the tasks she had assigned. The subject line reads Contracts. In the email conversation I let Keri know that I was happy to help her.

**EXHIBIT FF**
In an email submitted by Keri McCrensky dated January 2, 2016. She wanted me to schedule a meeting with her to discuss tasks and projects I was working on. The subject line reads: Projects and Tasks list.

**EXHIBIT GG**
I have a copy of the Tracker List that Ann Nelson and Keri McCrensky wanted me to fill out on a daily basis and I would have to meet with them weekly.

**EXHIBIT HH**
In an email submitted by Keri McCrensky to Ann Nelson and myself states that I would be working on an issue tracker which will communicate what I have been working on an would have to meet with both of them weekly. The email is dated March 1, 2016 and the subject line reads Issue list.

**EXHIBIT II**
A copy of an email dated April 1, 2016 shows that I did not want Sasha Corken to say anything to Keri just to keep my complaint on file.

**EXHIBIT JJ**
An email dated February 11, 2014 shows I was reaching out the IT department in regards to scheduling a meeting in regards to the IS Help Desk system.

**EXHIBIT KK**
In an email submitted by Keri McCrensky dated February 24, 2016 and the subject line reads Help with appointments. She wanted my help with scheduling appointment for her.

**EXHIBIT LL**
I have a copy of a letter submitted by the U.S. Department of Labor and Occupational Safety and Health Administration (OSHA) informing Scott Kenyon that a complaint was submitted on March 19, 2013. As employees we often worked in poor conditions at 30 Perwals street, Westwood, MA. The air quality was bad due to poor ventilation. The temperature was not

4

## Daphne Chikel vs. Steward Health Care

## Discrimination Case Exhibits

**MCAD Docket Number:16BEM01283**
**EEOC/HUD Federal Charge Number: 16C-2016-01527**
regulated. We had to work during construction and repairs to the buildings. I remember on instance when they were working on the roof and some harmful chemicals that they sprayed made its way into the building. Many of the employees were complaining about headaches and feeling sick.

## EXHIBIT MM
A copy of my resume.

## EXHIBIT NN
A copy of email sent to Supply Chain employees after I was laid off on May 4, 2016

EXHIBIT OO

MCAD Probable cause finding.

EXHIBIT PP
Defendant position statement.

EXHIBIT QQ
Plaintiff's Rebuttal to Defendant's position statement.

5